*In Re: D.E.*, No. 59, September Term, 2025. Opinion by Killough, J.

**JUVENILE LAW – JUVENILE JUSTICE REFORM ACT – MD. CODE ANN., CTS. & JUD. PROC. § 3-8A-03(a)(1)(ii) – JURISDICTION OF THE JUVENILE COURT – CONTINUATION OF JURISDICTION**

The Supreme Court of Maryland held that the juvenile court is not divested of jurisdiction over a child between the ages of ten and twelve when, after an adjudicatory hearing, the court finds the child not involved in the alleged crime of violence that brought the case within the court's jurisdiction but finds the child involved in a lesser offense arising out of the same incident. Under § 3-8A-03(a)(1)(ii) of the Maryland Courts and Judicial Proceedings Article, jurisdiction attaches when the State files a delinquency petition alleging that the child committed an act that, if committed by an adult, would constitute a crime of violence, or an act arising out of the same incident as such an act. Once jurisdiction attaches, § 3-8A-07(a) of the Courts & Judicial Proceedings Article provides that it continues until the child reaches twenty-one years of age unless terminated sooner. A finding that the child was not involved in the crime of violence is not among the events that terminate jurisdiction.

**JUVENILE LAW – JURISDICTION OVER OFFENSES ARISING OUT OF THE SAME INCIDENT – MD. CODE ANN., CTS. & JUD. PROC. § 3-8A-03(a)(1)(ii)(2)**

Jurisdiction over an offense arising out of the same incident as an alleged crime of violence is derivative at the filing stage but durable thereafter. A delinquency petition must allege involvement in a crime of violence to anchor the related offense within the juvenile court's jurisdiction over a child between ten and twelve. That derivation, however, operates only at the moment of filing. Once jurisdiction attaches, jurisdiction obtained under the same-incident clause of § 3-8A-03(a)(1)(ii) endures on the same terms as jurisdiction obtained under the crime-of-violence clause, and it survives a not-sustained finding, *nolle prosequi*, or dismissal of the crime of violence through any other means.

**CONSTITUTIONAL LAW – EQUAL PROTECTION – FOURTEENTH AMENDMENT – ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS – JUVENILE JUSTICE REFORM ACT – RATIONAL BASIS REVIEW**

The juvenile delinquency finding of a twelve-year-old child does not violate the Equal Protection Clause of the Fourteenth Amendment or Article 24 of the Maryland Declaration of Rights because, under § 3-8A-07(a), when the State alleges a child's involvement in a crime of violence and that allegation is supported by probable cause, that child is distinguishable from a child alleged to have involvement only in a misdemeanor. There is

a rational relationship between treating juveniles accused of involvement in violent crimes differently than those unaccused and the State's legitimate interest in treating allegations of violent conduct differently from nonviolent conduct. A twelve-year-old child for whom probable cause existed to allege involvement in an act that would constitute a crime of violence if committed by an adult is not similarly situated to a twelve-year-old child for whom probable cause only existed to allege involvement in a non-violent misdemeanor.

Circuit Court for Baltimore City
Case No.: 324088004J
Argued: June 4, 2026

IN THE SUPREME COURT
OF MARYLAND

No. 59

September Term, 2025

IN RE: D.E.

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

Opinion by Killough, J.

Filed: July 22, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Under the Juvenile Justice Reform Act of 2022 ("JJRA"), the juvenile court has no jurisdiction over a delinquency proceeding against a child under the age of thirteen. But there are exceptions. One exception is when a child, at least ten years old, is alleged to have committed an act that, if committed by an adult, would constitute a crime of violence. Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 3-8A-03(a)(1)(ii)(1) (2022).[1] A second exception—the one at issue in this appeal—applies when a child is alleged to have committed an act arising out of the same incident as such a crime of violence. *Id.* § 3-8A-03(a)(1)(ii)(2). A child who falls within either exception comes within the juvenile court's exclusive original jurisdiction.

A juvenile petition charged D.E., then twelve years old, with robbery and four lesser offenses arising from the same incident. Robbery is a crime of violence. Its presence in the petition placed D.E. within the juvenile court's jurisdiction. After an adjudicatory hearing, a magistrate found D.E. not involved in the robbery but involved in misdemeanor theft. D.E. then moved to dismiss. He argued that the juvenile court lost its jurisdiction the moment it declined to sustain the robbery charge, because a twelve-year-old alleged to have committed only a misdemeanor cannot be brought into juvenile court at all.

We granted certiorari before judgment in the Appellate Court of Maryland to consider the following two questions:[2]

---

[1] We apply the provisions of the Juvenile Causes subtitle in effect at the time of the alleged acts—the provisions as amended by the JJRA, 2022 Md. Laws chs. 41 & 42 (eff. June 1, 2022) and before the effective date of the Juvenile Law Reform Act of 2024, 2024 Md. Laws ch. 735 (eff. Nov. 1, 2024). The 2024 Act's amendments do not bear on the question presented.

[2] *In re D.E.*, 493 Md. 311 (2026).

1. Under the jurisdictional provision of the 2022 JJRA, CJP § 3-8A-03(a) (excluding twelve-year-old children except in certain circumstances), is the juvenile court divested of jurisdiction where the State fails to sustain the enumerated offense that established the basis for jurisdiction?

2. Because twelve-year-old children who are "alleged to have committed" a misdemeanor alone cannot be brought within the juvenile court's jurisdiction, does a twelve-year-old's delinquency finding on a misdemeanor violate equal protection?

We answer the first question in the negative. Jurisdiction attached when the State filed the delinquency petition, and nothing in the Juvenile Causes subtitle divested the court of that authority. The statutory provision governing how a juvenile court *acquires* jurisdiction is entirely distinct from the provision dictating how long that jurisdiction *lasts*. D.E. asks us to read the former as if it controlled the latter. Because the plain text does not support that reading, we decline to adopt it. Regarding the second question, D.E.'s equal protection claim fails on the merits because he did not satisfy his burden of proving unequal protection under the law or selective enforcement of the law. Accordingly, we affirm.

## I.

## BACKGROUND

### A. The Incident and the Adjudication

On the evening of February 13, 2024, Kelly Drnec stopped at a Royal Farms store on Light Street in Baltimore City on her way home from an event. She carried a large black purse holding a laptop, a cell phone, credit cards, and a smaller green and white purse. Several teenagers were in and around the store. Drnec noticed one of them, a masked youth later identified as D.E., following her. When she left the store, D.E. and

2

others approached her. D.E. took the small purse from her and took the larger purse, which Drnec had dropped, from the ground. During the encounter, someone threw liquid on her.

The State filed a delinquency petition charging D.E. with five counts arising from the incident: robbery; conspiracy to commit robbery; second-degree assault; theft of property valued at $1,500 or more; and theft of property valued between $100 and $1,500. Robbery is a crime of violence. Md. Code Ann., Crim. Law § 14-101(a)(9). Because D.E. was twelve, the robbery allegation is what brought his case within the juvenile court's jurisdiction under CJP § 3-8A-03(a)(1)(ii).

At the adjudicatory hearing, the contested question was one of sequence. The magistrate concluded D.E.'s actions constituted a "taking." The magistrate ruled that if the liquid was thrown before the taking, the force element of robbery would be met. If the liquid was thrown after the taking, the offense was theft. The theft at issue—of property valued between $100 and $1,500—is a misdemeanor. Md. Code Ann., Crim. Law § 7-104(g)(2). The magistrate reserved her ruling to study Drnec's testimony, which she found internally inconsistent on the timing. Several weeks later, she returned with her findings. She found D.E. involved in misdemeanor theft, reasoning that taking both purses and running showed an intent to permanently deprive. On the robbery count, she found that the State had not proved force or intimidation beyond a reasonable doubt. She found D.E. was not involved on the remaining counts: the conspiracy count failed for want of evidence of an agreement, the assault count failed because another person threw the liquid, and the felony theft count failed, because the State did not prove the property's value exceeded $1,500.

3

The magistrate precisely framed the reserved question: "Was the liquid thrown at her and then the items taken from her? In which case, you've got an assault and a robbery. Was the liquid thrown at her after her items were taken? In which case you have a theft." On the theft, she found the intent to permanently deprive established because D.E. "took the [smaller] purse and took the black purse and ran off with both."

**B. The Motion to Dismiss, Disposition, and Exceptions**

After the magistrate's ruling, D.E. moved to dismiss the sustained misdemeanor theft count for lack of jurisdiction. He argued that once the court declined to sustain the robbery—the only jurisdiction-qualifying offense in the petition—the court lost jurisdiction over him and could not proceed to disposition. The magistrate denied the motion, explaining that under *In re J.B.*, 261 Md. App. 274 (2024), jurisdiction attached at the filing of the petition and continued thereafter.

The magistrate found D.E.'s case indistinguishable from *In re J.B.* The issue of jurisdiction, she explained, "really relates to whether or not there was a crime of violence charged," and the court is not divested "simply because misdemeanors were sustained, but not the underlying [crime of violence]."

The juvenile court proceeded to disposition. At disposition, D.E. asked the magistrate to find him not delinquent on the grounds that he did not need juvenile services. The court declined, finding D.E. delinquent and intervention appropriate for purposes of behavior modification. The magistrate placed D.E. on six months' probation with various

4

conditions.[3] D.E. filed exceptions to the magistrate's findings and recommendations and renewed his motion to dismiss. A judge of the juvenile court heard the exceptions and denied them. The court explained that the General Assembly "knows the difference between allegations and sustained charges[,]" and that the statute's jurisdictional test "rests on the charges, not the ultimate conclusion."

D.E. noted an appeal to the Appellate Court of Maryland. Before that court heard argument, however, D.E. petitioned this Court for a writ of certiorari, which we granted. *In re D.E.*, 493 Md. 311 (2026).

## II.

## STANDARD OF REVIEW

Whether the juvenile court has jurisdiction in a juvenile matter is a question of statutory interpretation, which we review de novo. *In re M.P.*, 487 Md. 53, 84 (2024). We look to a statute's plain language to determine what the General Assembly intended. *Cutchember v. State*, 493 Md. 187, 201–02 (2026). If the words the General Assembly chose are clear and consistent with the statute's purpose, our inquiry ends. *Breitenbach v.*

---

[3] D.E.'s probation expired by operation of law on June 19, 2025, effectively concluding the underlying dispute. While this appeal may "ostensibly appear moot," *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 352 (2019), courts may review a moot controversy if collateral consequences flow from the disposition, *id.*, or if the issue merits discretionary review, *see, e.g., In re S.F.*, 477 Md. 296, 318–23 (2022). Because neither party raised nor briefed the issue, we need not definitively resolve whether the expiration of probation renders this appeal moot. Even assuming that the matter is technically moot, we exercise our discretion to address the questions presented. As in *S.F.*, the statutory interpretation issues raised here "will likely reoccur, involve the same parties within the juvenile justice system . . ., likely evade judicial review, and concern[] a matter of public interest[.]" *Id.* at 319.

*N.B. Handy Co.*, 366 Md. 467, 473 (2001). We do not insert into a statute exceptions or limitations the Legislature left out, *see Nesbit v. Gov't Emps. Ins. Co.*, 382 Md. 65, 75 (2004), and we do not construct an element of a statute from the absence of language, *Haile v. State*, 431 Md. 448, 467 (2013).

### III.

### DISCUSSION

Juvenile delinquency proceedings are civil in nature. *In re Anthony R.*, 362 Md. 51, 69 (2000). They are governed by the Juvenile Causes subtitle, whose stated purposes include providing "for the care, protection, and wholesome mental and physical development of children" and "a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest." CJP § 3-8A-02(a)(4). And, importantly, a delinquency adjudication is not a criminal conviction. *In re Victor B.*, 336 Md. 85, 93 (1994).

The juvenile court is a court of limited jurisdiction; it exercises only the authority a statute confers. *Smith v. State*, 399 Md. 565, 578 (2007). When the State files a delinquency petition, the court obtains "exclusive original jurisdiction" over the action. *Parojinog v. State*, 282 Md. 256, 260 (1978). The age that controls the determination of jurisdiction is the child's age when the alleged act was committed. CJP § 3-8A-05.

Before 2022, the juvenile court's jurisdiction reached any "child who is alleged to be delinquent," without regard to age. CJP § 3-8A-03(a)(1) (2020 Repl. Vol., 2021 Supp.). The 2022 JJRA changed that. It imposed age-based minimums on the juvenile court's authority. As we explained in *In re M.P.*, the JJRA "removed from the juvenile courts'

6

jurisdiction juvenile delinquency proceedings against children under 13 years of age, with the exception of those aged 10 to 12 years old charged with committing an act that would be considered a crime of violence if committed by an adult." 487 Md. at 59. The statute, CJP § 3-8A-03(a)(1), provides that the juvenile court has exclusive original jurisdiction over a child:

> (i) Who is at least 13 years old alleged to be delinquent; or
>
> (ii) Except as provided in subsection (d) of this section, who is at least 10 years old alleged to have committed an act:
>
> 1. That, if committed by an adult, would constitute a crime of violence, as defined in § 14-101 of the Criminal Law Article; or
>
> 2. Arising out of the same incident as an act listed in item 1 of this item[.]

A companion provision states the rule in the negative: the juvenile court "does not have jurisdiction over[,]" "[e]xcept as provided in subsection (a)(1)(ii) of this section, a delinquency proceeding against a child who is under the age of 13 years." CJP § 3-8A-03(d)(7). The JJRA left untouched the provision that governs how long jurisdiction lasts once it is obtained. That provision reads: "If the court obtains jurisdiction over a child under this subtitle, that jurisdiction continues until that person reaches 21 years of age unless terminated sooner." *Id.* § 3-8A-07(a).

The parties read these provisions differently. The State reads CJP § 3-8A-03(a)(1)(ii) to mean that if a delinquency petition alleges a qualifying crime of violence and a non-qualifying offense arising out of the same incident, the court's jurisdiction over both attaches at the time of filing and is not lost if the qualifying offense is later not sustained or otherwise dismissed. D.E. reads the same provision to make continued

7

jurisdiction contingent on the qualifying offense remaining viable. On his reading, if the qualifying offense disappears—whether by *nolle prosequi*, a not-sustained finding, or any other route—the court loses jurisdiction over every non-qualifying offense with it.

Based on our reading of the plain language of the statute, we agree with the State.

## A. The Statute Assigns Two Jobs to Two Provisions

This case turns on a distinction the parties tend to blur. Two provisions are at work, and they do different jobs.

Section 3-8A-03 tells the juvenile court how it obtains jurisdiction. For a child ten to twelve years old, the answer is that jurisdiction is determined at the charging stage: the petition must allege a crime of violence or an act arising from the same incident as a crime of violence. Subsection 3-8A-07(a) tells the court how long that jurisdiction lasts once the court has obtained it. The answer is until the child turns twenty-one, "unless terminated sooner." CJP § 3-8A-07(a).

D.E.'s argument depends on collapsing those two jobs into one. He reads § 3-8A-03(a)(1)(ii) as not only conferring jurisdiction at the outset but also as imposing a condition that must persist at every subsequent stage of the proceeding. That provision establishes jurisdiction over a child based on two categories of alleged conduct. The first encompasses an act that, if committed by an adult, would constitute a crime of violence (the "crime-of-violence clause"). CJP § 3-8A-03(a)(1)(ii)(1). The second covers an act arising out of the same incident as the alleged crime of violence (the "same-incident clause"). *Id.* § 3-8A-03(a)(1)(ii)(2). The misdemeanor theft charge, D.E. contends, could only fall within the juvenile court's purview via the same-incident clause. Because that clause operates purely

8

by reference to a companion crime of violence, he argues that when the crime-of-violence anchor disappears, jurisdiction over the derivative same-incident charge dissolves with it.

There are three potential interpretations of how the same-incident clause interacts with the crime-of-violence clause. The first treats the same-incident clause as a co-equal grant of jurisdiction. Under this view, the two clauses independently delineate two categories of qualifying conduct; a petition alleging either act successfully invokes the court's jurisdiction, which then persists under § 3-8A-07(a). The second reading treats the same-incident clause as derivative but durable. It relies on the crime-of-violence allegation to establish jurisdiction at the moment of filing—as an act qualifies only by virtue of its connection to a concurrent crime-of-violence charge—but once that jurisdiction attaches, it endures on equal footing with the primary charge. The third reading, pressed by D.E., treats the same-incident clause as derivative and contingent. Under this interpretation, the clause possesses no independent legal existence; if the anchoring charge fails at any point, the dependent charge must fail as well. Consequently, the moment the robbery allegation against the twelve-year-old is dismissed, the jurisdictional foundation dissolves, requiring the immediate dismissal of the non-violent charges. While this final reading possesses a certain structural symmetry, it finds no anchor in the plain language of the statute and, as detailed below, yields consequences the General Assembly could not have intended.

We need not definitively choose between the first two interpretations because the result is identical under either framework: jurisdiction that attaches at filing continues under § 3-8A-07(a) until terminated by an event explicitly enumerated within the subtitle. A "not-sustained" finding on the anchoring offense is not a statutorily authorized

9

mechanism for termination. That said, characterizing the clause as *derivative but durable* provides the most faithful account of the statutory text; the same-incident clause requires a crime-of-violence reference to activate, but that structural dependence is fully satisfied at the moment of filing. What we reject, and all we need to reject to resolve this appeal, is the third reading: that the same-incident clause is not only derivative of but also contingent upon the crime-of-violence clause, such that jurisdiction is dissolved the moment the anchor offense is not sustained.

**B. Companion Jurisdiction Is Derivative at Filing but Durable Thereafter**

The same-incident clause is indeed derivative in a narrow sense. To bring a related, nonviolent charge against a twelve-year-old into juvenile court, the petition must contain a crime-of-violence allegation to anchor it. CJP § 3-8A-03(a)(1)(ii)(1). Without that anchor, the same-incident clause in CJP § 3-8A-03(a)(1)(ii)(2) has nothing to attach to, and jurisdiction over the nonviolent charge never arises. That much D.E. has right. But the derivation operates exclusively at the filing stage. The clause asks whether the act, as alleged, arose from the same incident as an alleged crime of violence. *Id.* § 3-8A-03(a)(1)(ii)(2). At the time of filing, that condition is either satisfied, or it is not. Nothing in the clause makes the grant contingent on the anchor's survival through adjudication. It uses the same operative phrase as the crime-of-violence clause—"alleged to have committed"—and for the same reason. That phrase, moreover, is not repeated in each clause. It appears once, in the subsection that introduces both: The court has jurisdiction over a child "alleged to have committed an act" that is either a crime of violence or an act arising out of the same incident. *Id.* § 3-8A-03(a)(1)(ii). A single "alleged to have

10

committed" governs both clauses at once, so the two cannot be read to operate on different timelines—whatever the phrase means for one, it means for the other. Both are charging-stage conditions. Neither is a running one, conditioned upon the ultimate disposition of the charges. *Cf. Harris v. State*, 94 Md. App. 266, 277 (1992) ("In many circumstances, once a court lawfully acquires jurisdiction over a case, that jurisdiction may continue despite subsequent events, even though those events would have prevented jurisdiction from attaching in the first place.").

Once jurisdiction attaches, the two clauses operate identically. They endure because CJP § 3-8A-07(a) mandates it: "that jurisdiction continues until that person reaches 21 years of age unless terminated sooner." The statute draws no distinction between jurisdiction obtained through the crime-of-violence clause and jurisdiction obtained through the same-incident clause. Both are jurisdictional under the statute, and both continue on equal terms. D.E.'s error is to treat a filing-stage threshold determination as an ongoing condition. The statute imposes no such requirement, and we decline to read one into it.[4]

A further feature of the statutory language strikes at the root of D.E.'s theory. Both provisions speak to jurisdiction over *the child*—not jurisdiction over *the charge*. Subsection 3-8A-03(a) confers "exclusive original jurisdiction over" "[a] child" who is alleged to have committed a qualifying act. Similarly, § 3-8A-07(a) provides that "[i]f the

---

[4] We address only the case before us in which a single respondent was charged with both a crime of violence and a related offense arising from the same incident. We have no occasion to consider, and express no view on, how CJP § 3-8A-03(a)(1)(ii)(2) applies to other configurations of respondents or charges.

11

court obtains jurisdiction over a child," that "jurisdiction continues" until the child turns twenty-one. The object of the statutory grant, and of its continuation, is the individual respondent. D.E.'s theory treats jurisdiction as though it attached to individual counts, dissolving piecemeal as those counts are resolved one by one. The statutory architecture is not structured in this manner. Once the petition's threshold allegations bring the child within the court's purview, the court possesses jurisdiction over the child, and § 3-8A-07(a) maintains that authority irrespective of the ultimate disposition of any single count.

As the Appellate Court explained in *In re J.B.*, "if the General Assembly wanted to circumscribe the juvenile court's jurisdiction in circumstances like those presented in this case, it could have enacted a . . . statutory mechanism to allow juveniles to seek dismissal of charges that would not otherwise be within the court's original jurisdiction." 261 Md. App. at 292. But it did not, "and we see nothing in the legislative history of § 3-8A-03 that would support appellant's interpretation of the statute." *Id.* In fact, the General Assembly enacted a subtitle specifically addressing when the juvenile court's jurisdiction is terminated. D.E.'s proposed avenue for jurisdiction termination is not one that is mentioned in that subtitle.

Section 3-8A-07—titled "Continuation or cessation of jurisdiction"—supplies the rule: once obtained, jurisdiction "continues until that person reaches 21 years of age unless terminated sooner." The subtitle tells us how jurisdiction may be terminated sooner. It may be waived to the criminal court. CJP § 3-8A-06. It ends when the child ages out. It ends in other circumstances the General Assembly has specified. A not-sustained finding on the offense that anchored jurisdiction is not on the list. D.E. asks us to add it. We

12

decline to "judicially insert language to impose exceptions, limitations or restrictions not set forth by the legislature." *Langston v. Langston*, 366 Md. 490, 515 (2001); *see also Comptroller of Treasury v. Blanton*, 390 Md. 528, 537 (2006) ("Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius*, or the expression of one thing is the exclusion of another." (citation omitted)).

D.E. responds that not every termination of juvenile jurisdiction is governed by an express provision. He is right about that, but that proposition does not yield the conclusion he seeks. When a court finds a child not involved on every count, it closes the case, and no statute separately governs the act of closing. But that closing is not a divestiture of jurisdiction; it is the natural exhaustion of the matter. The court keeps the power to enter its not-involved findings and end the case—it simply has nothing left to adjudicate. A case in which one count has been sustained and disposition remains is different in kind: there, something is left to decide, and the power to decide it is the very jurisdiction D.E. says has vanished. But that is not this case. This was a split result. The magistrate sustained one count and declined another. After a split result, a live controversy persists: disposition on the count that was sustained. The juvenile court did not strip itself of authority by resolving the robbery in D.E.'s favor. We hold that the juvenile court's authority to proceed to disposition on the misdemeanor theft endures until terminated under one of the conditions set forth in CJP § 3-8A-07(a).

13

## C. Four Textual Points Confirm the Reading

Four features of the text of "Subtitle 8a—Juvenile Causes—Children Other Than Cinas and Adults" confirm that jurisdiction, once obtained, survived the not-sustained finding on the robbery.

*First*, the subtitle already contains express termination mechanisms. Jurisdiction may be waived to the criminal court. CJP § 3-8A-06. It ends when the respondent turns twenty-one. *Id.* § 3-8A-07(a). A not-sustained finding on the anchor offense is not among the mechanisms the General Assembly wrote. The omission is not an invitation to the courts; it is a decision by the Legislature.

*Second*, D.E.'s construction of "alleged to have committed" as a continuous, present-tense condition yields an untenable result. Consider the status of a case at the close of an adjudicatory hearing: the threshold allegations have been resolved, and the child is no longer merely "alleged" to have committed an offense—the factfinder has answered that question one way or the other. If "alleged to have committed" imposed a condition that must be continuously satisfied throughout the litigation, then jurisdiction would evaporate at the close of every adjudication, including those that fully sustain the crime-of-violence charge. On that logic, no juvenile court could ever proceed to the dispositional stage because the allegations would cease to be allegations the moment they are proven.

Such an interpretation yields an absurd result, and it is a foundational canon of statutory construction that we avoid interpretations that are illogical, unreasonable, or inconsistent with common sense. *See Blandon v. State*, 304 Md. 316, 319 (1985). D.E. counters that a sustained finding preserves jurisdiction while only a not-sustained finding

14

destroys it, meaning disposition is never imperiled when the crime of violence is proved. The statutory text forecloses this asymmetrical reading. The statute explicitly anchors jurisdiction to what the child is *"alleged* to have committed," not to what the child is ultimately found to have done; it speaks exclusively of allegations, never of findings. If the live status of the allegation controlled, a sustained finding would alter that status as definitively as a not-sustained one—converting "alleged" into "proved"—and the statute would have to account for that mutation. It does not. Because jurisdiction is measured by the allegation rather than the adjudicatory result, the result cannot bear on jurisdiction in either direction. The sensible reading is the ordinary one: "alleged to have committed" describes the posture of the case at the moment jurisdiction is invoked, when the petition is filed. As the juvenile court aptly observed, the General Assembly "knows the difference between allegations and sustained charges," and it tied jurisdiction to the former.

*Third*, D.E.'s interpretation would render the same-incident clause a nullity, violating the cardinal rule that statutes must be construed so that no part is rendered surplusage or meaningless. *See Gillespie v. State*, 370 Md. 219, 222 (2002). The same-incident clause exists to keep a single factual episode consolidated, allowing the juvenile court to adjudicate related, nonviolent conduct alongside the violent conduct from which it arose. But if jurisdiction under the same-incident clause terminates whenever the crime of violence is not sustained, the clause could never operate past the adjudicatory stage. It would fail to preserve the court's authority when the State, for its own reasons, dismisses or enters a *nolle prosequi* as to the anchor charge, just as it would fail to survive a not-sustained finding. It would endure only when the anchoring charge is fully sustained—a

15

scenario in which the court already possesses independent jurisdiction over the respondent through the crime-of-violence clause itself. Under D.E.'s reading, the same-incident clause would be surplusage in every case in which its application actually matters. The General Assembly enacted the same-incident clause to serve a distinct procedural purpose; our durable reading permits it to do so. *See In re J.B.*, 261 Md. App. at 289; *cf. Gray v. State*, 6 Md. App. 677, 684 (1969) (holding that a jury's acquittal of a sixteen-year-old on an anchoring murder charge did not strip the circuit court of jurisdiction over a sustained manslaughter count).

*Fourth*, the statute joins the two clauses with the disjunctive "or," not the conjunctive "and." CJP § 3-8A-03(a)(1)(ii). The choice of words matters. The provision grants jurisdiction over a child alleged to have committed an act of either kind. It does not condition jurisdiction over a same-incident-clause act charge on the continued vitality of a crime-of-violence charge; it identifies two categories of qualifying acts and treats an allegation of either as sufficient. The disjunctive does more than offer two ways in. It places the clauses on equal footing as sufficient conditions for jurisdiction, and § 3-8A-07(a) then continues the jurisdiction so obtained without ranking the clause that supplied it. Nothing marks the same-incident clause as subordinate to the crime-of-violence clause once jurisdiction has attached. D.E.'s argument—that the same-incident clause rises and falls with the crime-of-violence clause at every stage of the proceeding—asks the disjunctive to function as a conjunctive. The text reads otherwise.

16

**D.** *In re J.B.* **Was Correctly Decided, and We Adopt Its Reasoning**

The Appellate Court has previously answered the same question presented in this case, in all but procedural detail, in *In re J.B.* There, a twelve-year-old was charged with first-degree assault, which is a crime of violence, and second-degree assault, which is not. 261 Md. App. at 278. The two charges arose from the same incident. *Id.* Under a plea agreement, J.B. admitted involvement in the second-degree assault, and the State nol prossed the first-degree assault. *Id.* J.B. then moved to dismiss, arguing that the nol pros of the anchor charge stripped the court of jurisdiction over the remaining count. *Id.* at 281. The juvenile court denied the motion, and the Appellate Court affirmed. *Id.* at 281–82, 289.

The Appellate Court's reasoning in *In re J.B.* tracks the analysis we adopt today. The court explained that CJP § 3-8A-03(a)(1)(ii)(1) "granted the juvenile court exclusive original jurisdiction" over the crime of violence, and that CJP § 3-8A-03(a)(1)(ii)(2) "provided the juvenile court with jurisdiction to adjudicate" the lesser offense "because that alleged act arose 'out of the same incident'" as the qualifying offense. *Id.* at 289. The court held that "the plain language of CJP § 3-8A-03(a)(1) is clear and unambiguous," and that jurisdiction continued after the anchor charge left the case. *Id.* at 289–90. If the General Assembly had wanted the juvenile court to lose jurisdiction in those circumstances, it could have provided a statutory mechanism for that loss. *Id.* at 292. It "chose not to do so[,]" and the Appellate Court saw "nothing in the legislative history of § 3-8A-03" supporting the contrary reading. *Id.*

17

The Appellate Court grounded that holding in settled law. It invoked the principle that "once a court lawfully acquires jurisdiction over the person and the subject matter of the litigation, subsequent events will not ordinarily deprive the court of its jurisdiction[.]" *Id.* at 286 (quoting *Gray*, 6 Md. App. at 682). And it relied on the rule that a court "will exercise its jurisdiction even when the charge which served as the basis for the assertion of jurisdiction is later *nolle prossed* or eliminated in some other manner." *Id.* at 289 (quoting *Harris*, 94 Md. App. at 277) (italics in original). These principles do not turn on the specific mechanism by which the anchoring charge is resolved. They apply with equal force whether that charge is dismissed via *nolle prosequi*, as in *In re J.B.*, or terminated by a "not-sustained" finding, as is the case here. Accordingly, we adopt the sound reasoning of the Appellate Court's opinion in *In re J.B.* and hold that its principles govern the present dispute.

D.E. seeks to confine *In re J.B.* to the context of a plea agreement, but we find no reason to limit *In re J.B.* to its facts. Indeed, the *In re J.B.* court explicitly declined to circumscribe its holding in such a manner. *See id.* at 292. It held that jurisdiction continued because the surviving charge arose from the same incident as the one that brought the case within the court's purview "in the first instance." *Id.* Moreover, the court anticipated the very argument D.E. presses here, observing that it saw "nothing in Maryland law" to support the contention that a juvenile court loses jurisdiction "if the child is not found 'involved' as to a crime of violence." *Id.* at 289 n.6. That footnote describes the exact scenario presented in this appeal.

The procedural difference D.E. presses—a nol pros in *In re J.B.*, and a not-sustained finding here—makes no difference. Jurisdiction turns on the statute, not on the route by which the anchor charge is resolved. There is no textual basis to treat the two differently, and we treat them the same. Our holding governs both.

### E. *In re M.P.* Does Not Undermine *In re J.B.*

D.E.'s reliance on our decision in *In re M.P.* is misplaced. He reads *In re M.P.* to stand for the broad proposition that juvenile jurisdiction never permanently vests and must be reassessed whenever judicial power is exercised. That reading stretches our holding in that case beyond recognition.

*In re M.P.* construed a different provision—subsection (d)(7), the JJRA's affirmative jurisdiction-stripping rule. 487 Md. at 59. M.P. was twelve when he was charged with motor vehicle theft and related offenses. *Id.* at 59–60. He was not charged with any crime of violence, or with any act arising out of one. *See id.* at 60 n.1. The juvenile court initially had jurisdiction over M.P. because the JJRA had not yet been enacted when the crime allegedly occurred and when the State filed its petition. *Id.* at 62–63. The JJRA took effect while his case was pending but before adjudication. *Id.* Once it did, subsection (d)(7)'s prohibition on delinquency proceedings against children under thirteen reached him, and the lone exception—subsection (a)(1)(ii)—did not, because he had no qualifying charge. *Id.* at 62. We held that the new statute stripped the court of jurisdiction by operation of law. *Id.* at 59–63, 88.

Subsection (d)(7) is a true jurisdiction-stripping provision. It was enacted by the General Assembly, it speaks to the court's power, and it forbids proceedings against an

19

entire class of children. No such provision is at play here. Because D.E. was charged with a crime of violence, he falls squarely within the statutory exception that subsection (d)(7) expressly preserves. Indeed, our holding in *In re M.P.* explicitly left such circumstances undisturbed. We limited our ultimate holding to cases "in which there is no genuine factual dispute concerning the juvenile's age or whether the juvenile was charged with having committed an act that would not be a crime of violence if committed by an adult[.]" *Id.* at 63. Because D.E. was charged with an anchoring crime of violence, *In re M.P.*'s dismissal mandate is entirely inapplicable.

The isolated statements in *In re M.P.* upon which D.E. leans—that "[j]urisdiction can continue only where jurisdiction exists[,]" *id.* at 91, and that jurisdiction "can be terminated by operation of law[,]" *id.* at 92—were made exclusively to explain how an intervening statutory amendment could terminate jurisdiction that had already attached. We did not hold that any subsequent procedural development—whether an amended petition, an evidentiary ruling, or a "not-sustained" finding—instantly divests a court of power it lawfully obtained at filing. Read so broadly, *In re M.P.* would render juvenile jurisdiction perpetually fragile. We decline to endorse an interpretation that would introduce such instability into the law, and we find no conflict between the principles articulated in *In re M.P.* and *In re J.B.*[5]

---

[5] D.E.'s reliance on the Massachusetts' case *Commonwealth v. Vince V.*, 495 Mass. 96 (2024) is misplaced as the Massachusetts' juvenile delinquency statute is structurally different from ours in meaningful ways. *First*, juveniles are apparently entitled to a jury trial in some instances in Massachusetts. *See, e.g.*, *id.* at 97. No such right exists in Maryland. *Second*, Massachusetts defines "'delinquent child,' a child between 12 and 18

20

**F. The Statute's Remedial Purpose Does Not Require Dismissal**

D.E. looks beyond the statutory text to argue that his interpretation is compelled by the overarching purpose of the JJRA. Citing the Act's legislative history, he contends that its primary objective was to "lessen court involvement in the lives of Maryland's youngest hildren," and that dismissal here would directly advance that end. This argument is unavailing for two reasons.

*First*, a statute's intent is reflected by the words it uses. *Price v. State*, 378 Md. 378, 387 (2003) ("[T]he legislative intent of a statute primarily reveals itself through the

---

years of age" to exclude a child whose offense is "a first offense of a misdemeanor" punishable by no more than six months, Mass. G. L. c. 119, § 52, and the Juvenile Court's jurisdiction reaches only "delinquent children," Mass. G. L. c. 218, § 60. The exclusion thus operates on the child's status, and that status is fixed by what the child is found to have committed. Once the jury acquitted Vince V. of the felony and found him delinquent only as to a first-offense minor misdemeanor, he was no longer a "delinquent child" within the statute's own definition, and he had passed outside the class of children over whom the court has any power. *Vince V.*, 495 Mass. at 100. The Massachusetts Court was not inferring a termination rule from statutory silence; it was applying an express categorical exclusion. *See id.* CJP § 3-8A-03(a)(1)(ii) has no such exclusion and keys jurisdiction to what a child is "alleged to have committed," and nothing in the Juvenile Causes subtitle removes a child from the court's reach based on the offense for which he is ultimately found involved.

The Massachusetts scheme also supplies something ours does not. Under *Wallace W. v. Commonwealth*, 482 Mass. 789, 800–01 (2019), a Massachusetts juvenile court may still find and record that a first offense of a minor misdemeanor occurred, so that a later offense is not a first offense. The *Vince V.* court relied on that mechanism, directing that the jury's verdict be recorded as a *Wallace W.* determination. 495 Mass. at 100. Dismissal there was not an erasure; the conduct was found, recorded, and carried forward. Maryland has no comparable provision. Under D.E.'s reading, a theft proved beyond a reasonable doubt would simply vanish. *Finally*, the *Vince V.* court itself observed that the application of its statute "to cases involving multiple charges has proven to be difficult." *Id.* at 97. We see no reason to import that difficulty into Maryland, particularly where the Maryland statute, read as we read it, does not present the problem in the first place.

21

statute's very words[.]").  Subsection 3-8A-07(a) establishes continuing jurisdiction, and § 3-8A-03(a)(1) says nothing of terminating it.  That is where the inquiry begins and, on these facts, ends.

*Second*, D.E.'s account of the JJRA's purpose is too narrow.  The Act is remedial; we do not doubt it.  Before the JJRA supplied an age, § 3-8A-03 had no minimum age requirement, and the Act supplied one.  But the line it drew turns on two things at once— the age of the child and the seriousness of the allegation.  A child of ten to twelve is outside the juvenile court for most conduct, yet is within it when charged with a crime of violence or an act arising from the same incident.  That calibration serves both halves of the subtitle's purpose: serving the "best interests of the public or the child."  CJP § 3-8A-10(c)(4)(ii).  Nothing in the JJRA directs courts to read the juvenile causes statutes for the child's benefit alone, with no regard for the public interest the provision names in the same breath.

### G.  Practical Consequences and Existing Safeguards

Two further considerations confirm our reading.  The first is what a contrary reading would do.  If a not-sustained finding on an anchoring crime of violence automatically divested the juvenile court of jurisdiction, a ten-to-twelve-year-old charged with a violent offense could never resolve their case by admitting to a lesser, non-violent offense.  A plea to the lesser charge would instantly dissolve the jurisdictional anchor, requiring a mandatory dismissal of the remaining counts.  There is no textual or logical basis for treating a *nolle prosequi* entered pursuant to a plea agreement differently from a not-sustained finding entered after a contested hearing, and our holding governs both scenarios

22

alike.  Consequently, the reading D.E. presses would effectively foreclose the benefits of plea negotiations for the youngest respondents, exposing them exclusively to the binary hazards of a fully contested adjudicatory hearing—an outcome directly at odds with the benevolent purpose he invokes.  *See Bonilla v. State*, 443 Md. 1, 15 (2015) ("[P]lea agreements eliminate many of the risks, uncertainties and practical burdens of trial[.]" (quoting *Dotson v. State*, 321 Md. 515, 517 (1991))).

The second consideration is the concern D.E. presses from the opposite direction. He warns that our reading invites a prosecutor to attach a crime of violence to a petition for the sole purpose of reaching a young child, and then to proceed on the lesser charges alone.  The concern is a policy concern, not a textual one—as D.E. concedes, neither the JJRA's text nor its history addresses overcharging—and the cure he asks for is a judicial rewrite of a statute the General Assembly wrote otherwise.  We "may not substitute our own policy preferences for those of the General Assembly."  *Schmidt v. State*, 245 Md. App. 400, 415 (2020).  That a faithful reading "may seem unfair" in a given case does not free us to "ignore the statutory requirements in order to remedy any perceived unfairness." *Johnson v. Mayor & City Council of Balt.*, 387 Md. 1, 21 (2005).

The concern over prosecutorial overreach is overstated because the law already guards against it.  A prosecutor may not pursue a charge "that the prosecutor knows is not supported by probable cause."  Md. Rule 19-303.8(a).  Before adjudication, a respondent may move to dismiss a petition that fails to allege facts establishing an offense within the court's jurisdiction.  CJP § 3-8A-13; *see In re Roneika S.*, 173 Md. App. 577, 592–94 (2007).  And at disposition, a respondent found involved in only a minor act may ask the

23

court to find him not delinquent and not in need of its intervention—as D.E. did here. A disposition requires both an adjudicatory finding that the child committed a delinquent act and a dispositional finding that the child needs guidance, treatment, or rehabilitation; without the second, there is no delinquency, and the petition is dismissed. *In re Charles K.*, 135 Md. App. 84, 93–94 (2000).

This record shows no overcharging in any event. There was probable cause for the robbery charge. Both elements of robbery—a taking and the use of force—were in play, and the question that separated robbery from theft was close. The magistrate reserved her ruling on the day of the hearing and returned weeks later to decide it, explaining that she "had the most difficulty" with the timing of the force relative to the taking. The victim's testimony on that timing conflicted, and it was dispositive of the robbery count. A charge the factfinder finds that close, even one that ultimately fails, is not a charge brought without a basis. We are not presented with prosecutorial overreach, and we will not read the statute as though we were.

### H. D.E. Failed to Prove an Equal Protection Violation

D.E. contends that his delinquency finding denies him the equal protection of the laws. He asserts that his reading of the JJRA "avoids the threat of equal protection violations or at the very least the unequal treatment of children." As framed in his opening brief, D.E.'s claim is that his "delinquency finding violates the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights because there is no rational basis for treating differently twelve-year-old children alleged to have committed misdemeanors." "Solely because the State charged [him] with robbery," he

24

says, "he was subjected to further proceedings . . . that other twelve-year-old children alleged to have committed the same misdemeanor would not have undergone." The State responds that D.E. is not similarly situated to a child charged with a misdemeanor alone, because there was probable cause to charge him with robbery. We agree.

The governing framework is settled. The Equal Protection Clause "directs that all persons similarly situated be treated alike[,]" and although Article 24 of the Maryland Declaration of Rights contains no express equal protection clause, this Court has long held that the concept is embodied within it. *Neifert v. Dep't of Env't*, 395 Md. 486, 504–05 (2006). Decisions of the Supreme Court applying the Fourteenth Amendment bind us in construing that Clause and are persuasive in construing Article 24. *Id.* Because D.E. alleges no classification resting on a suspect class, his challenge to the statutory scheme is reviewed for a rational basis. *Cf. Wheeler v. State*, 281 Md. 593, 601–02 (1977) (explaining that "[c]lassifications based upon race, alienage, and national origin are inherently suspect[]" and when a claimant is not alleging classification under a suspect class, such as legislative classification, the rational basis test applies). Under that standard, a claimant must show "(1) the government treated them differently than it treated others similarly situated, and (2) the disparate treatment did not bear a rational relationship to a legitimate interest." *Neifert*, 395 Md. at 506.

D.E.'s claim fails as a matter of law as he is unable to show that the State has treated him differently than "others similarly situated." He argues that he is similar to twelve-year-olds alleged to have involvement in a misdemeanor and nothing more. But a child so charged is, by definition, a child the prosecution concluded should not be charged with

25

involvement in a crime of violence, either due to lack of probable cause or exercise of prosecutorial discretion. That is the whole of the difference between that child and D.E., and it is a difference the statute itself makes decisive. The record here supplies ample probable cause for the robbery allegation, and D.E. does not contend otherwise. No amount of additional evidence could close the gap, because the gap is legal. A child for whom probable cause exists to allege involvement in a crime of violence is not similarly situated to a child for whom it does not. And, as explained further below, D.E. did not provide any evidence that the State's Attorney improperly exercised its discretion when deciding to charge him and not others for whom probable cause might exist to support a crime of violence charge.

Were it otherwise, the claim would fail at the second step as well. Distinguishing between a child for whom probable cause supports an allegation of involvement in a crime of violence and a child for whom it does not bears an obvious rational relationship to a legitimate end. The General Assembly drew the jurisdictional line by reference to the age of the child and the seriousness of the allegation, and it retained the juvenile court's authority over the younger child precisely where the conduct alleged is violent. Sorting cases by the gravity of what is alleged is not merely rational; it is the very judgment the JJRA embodies. D.E. is not treated worse than the twelve-year-old non-violent offender he identifies because of who he is. He is treated differently because of what the State had probable cause to allege he did.

To the extent D.E.'s complaint is instead directed at the charging decision itself, it is a claim of selective prosecution, and a different test governs. A claimant must show that

26

the enforcement decision "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985). D.E. makes neither showing. He offers no comparative data, alleges no improper motive, and identifies no suspect classification.

That is unsurprising, because the discretion he challenges is a discretion our Constitution commits to the Executive. A State's Attorney exercises "broad discretion" in deciding whether and how to charge. *Oglesby v. State*, 441 Md. 673, 680 (2015) (quoting *Evans v. State*, 396 Md. 256, 298 (2006)). That latitude flows from the separation of powers, and it is "a well-recognized part of our criminal justice system" that is "perfectly appropriate so long as the discretion is not exercised in an unconstitutional or illegal manner." *Id.* Nothing in this record suggests that the State's Attorney charged D.E. unconstitutionally, maliciously, or illegally. D.E. provides no evidence that the State's Attorney chose *not* to charge other juveniles for whom probable cause exists for improper reasons. And, as we have explained, the robbery charge was well founded, and the magistrate found the question it presented a close one.

Each of these grounds is independent of the others. D.E. has not shown that he is similarly situated to the children with whom he compares himself; the distinction the statute draws is rationally related to a legitimate interest in any event; and he has made no showing that the charging decision was constitutionally infirm. D.E.'s equal protection claim fails.

27

# IV.

## CONCLUSION

The juvenile court obtained jurisdiction over D.E. the moment the State filed a petition alleging involvement in a qualifying crime of violence alongside related offenses arising from the same incident. Under CJP § 3-8A-07(a), that jurisdiction continues through adjudication and disposition; nothing in the JJRA terminates it merely because the qualifying offense is not sustained. As the Appellate Court correctly recognized in *In re J.B.*—a holding undisturbed by *In re M.P.*—jurisdiction under the same-incident clause is derivative at filing but durable thereafter. The General Assembly has since signaled its agreement: rather than contracting jurisdiction in the wake of *In re J.B.*, the Legislature enacted the Juvenile Law Reform Act of 2024 to expand the offenses that can anchor jurisdiction for ten-to-twelve-year-olds. 2024 Md. Laws ch. 735. Because we presume the Legislature acts with knowledge of existing law, *Fuller v. State*, 397 Md. 372, 393 (2007), we will not treat a statutory scheme as a misreading the General Assembly itself chose to widen. If the statutory text is to be changed, the General Assembly must change it.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. APPELLANT TO PAY COSTS IN THIS COURT.**